UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES,<br><br>        Plaintiff,<br><br>    v.<br><br>SHAWN NIMAU,<br><br>        Defendant. | Case No. 20-cr-00090-RS-1<br><br>**ORDER DENYING MOTION TO SUPPRESS & DENYING REQUEST FOR *FRANKS* EVIDENTIARY HEARING** |

**I. INTRODUCTION**

Shawn Nimau moves to suppress all evidence seized from his digital devices and accounts following the execution of what he views as a constitutionally deficient search warrant. Alternatively, alleging material omissions in the warrant application, Nimau requests an evidentiary hearing pursuant to *Franks v. Delaware,* 438 U.S. 154 (1978). The government counters that the warrant is valid, and that the alleged omissions strengthen the warrant application. For the reasons explained below, both Nimau's suppression motion and *Franks* request are denied.

**II. BACKGROUND**

The grand jury returned a one count indictment against Nimau for possession of child pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2). The events giving rise to this charge start on the morning of April 28, 2019, when a user of Kik Messenger ("Kik"), a Canadian mobile communications application, uploaded and distributed an image through that platform. That image constitutes child pornography: it depicts a nude adolescent female, seated on the floor,

spreading her legs and exposing her genitalia to a camera positioned at or near floor level.[1] Upon its transmission, Microsoft PhotoDNA (a program Kik deploys in its anti-child-pornography efforts) brought the image to the attention of Kik's Law Enforcement Response Team ("LERT"), which comprises individuals trained to identify child pornography under Canadian law. Following their review of the image, LERT personnel forwarded it, along with the user's IP address, account information, and the fact that the image had been transmitted with an iPad (together, the "LERT Report"), to the Royal Canadian Mounted Police ("RCMP"). Based on the RCMP's determination that the IP address originated from the United States, the LERT Report was then forwarded to the United States Homeland Security Investigations (HSI) office in Ottawa, Canada. From there, the investigatory materials—*i.e.*, the LERT Report and RCMP IP address determination—began a two-leg trip to California. First, the HSI Ottawa office sent them to the HSI office in Alexandria, Virginia. Then, on August 30, 2019, the HSI Alexandria office included them in a report ("The HSI Kik Report") it disseminated to the HSI office in San Francisco, amongst others.

HSI Special Agent Savannah Stacer ("SA Stacer") reviewed the HSI Kik Report on November 5, 2019. She proceeded to investigate the April 28, 2019 incident, and eventually connected the relevant IP address with the home address of Nimau, then a member of the Redwood City, California police department. On November 19, 2019, SA Stacer sought and secured a federal warrant to search Nimau's home and person for evidence of criminal activity relating to child pornography. In the affidavit accompanying her application, SA Stacer indicated she had reviewed the image in question, describing it as follows:

> The image depict[s] a nude, minor female, between the ages of 10 and 13, seated on a floor with her legs spread apart and her vaginal opening exposed.

Stacer Warrant Affidavit, Dkt. 33 at ¶13. Stacer further indicated in the affidavit that the image initially had been identified as known child pornography by the Microsoft PhotoDNA program;

---

[1] The government submitted the photo as an exhibit to its opposition, which the Court has reviewed.

that, given her understanding of Kik's compliance practices, specially-trained LERT personnel would have reviewed the image before contacting law enforcement; that she was, based on her training and experience in the area of child pornography and child exploitation, familiar with federal child pornography law and the habits of individuals who violate it; and that she believed, on that basis, the image was child pornography within the meaning of 18 U.S.C. § 2256(A)(2). Significantly, SA Stacer did not include a copy of the image in the search warrant application. SA Stacer offered to show the image to the magistrate judge, who declined.[2] After rejecting SA Stacer's request to compel biometric unlocking of Nimau's devices, and amending the application accordingly, the magistrate judge issued the warrant.

Two days later, federal agents seized a dozen electronic devices while executing the warrant at Nimau's home. One iPad[3] proved fruitful, revealing both additional sexually explicit images of minors and the existence of an account with Keepsafe, a cloud-based data storage application. The following month, pursuant to a second warrant, HSI searched this Keepsafe account. All told, these two searches produced at least thirty-eight confirmed images of child pornography.

### III. DISCUSSION

Nimau advances three bases for suppression: (i) the absence of the offending image from the warrant application, (ii) overbreadth, and (iii) staleness.[4] Each is without merit. His *Franks*

---

[2] Nimau's contrary suggestion, that SA Stacer "with[held]" the image from the magistrate judge, is squarely refuted by SA Stacer's sworn testimony. *Compare* Reply, Dkt. 35 at 12 (implying SA Stacer "fail[e]d to present," or "with[held]," the image), *with* Stacer Supplemental Declaration, Dkt. 38-1 at ¶ 8 ("[D]uring Magistrate Judge Kim's review of the search warrant application and affidavit, Magistrate Judge Kim asked if I had brought a copy of the child pornography image. I replied that I had brought the image. I then asked whether I should show Magistrate Judge Kim the image. Magistrate Judge Kim declined.")

[3] Named "Shawn's ipad."

[4] For the first time in his reply brief, Nimau floats the notion that the magistrate judge ought to have inquired "whether the sending of the image was part of a police investigation by then-Officer Nimau." Reply, Dkt. 35 at 7. Setting aside this argument's untimeliness, "innocent explanations . . . cannot eliminate suspicious facts from the probable cause calculus." *Ramirez v. City of Buena Park,* 560 F.3d 1012, 1024 (9th Cir. 2009).

request likewise fails, as a corrected warrant application would be even less assailable than the one he challenges here.

### A. Motion to Suppress

#### 1. Omission of Offending Image

Federal law provides five definitions of child pornography. *See generally* 18 U.S.C. § 2256(2)(A). The first four, set out in 18 U.S.C. § 2256(2)(A)(i)-(iv), address readily-identifiable sexual conduct. *See generally* § 2256(2)(A)(i)-(iv) (targeting "sexual intercourse," "bestiality," "masturbation," and "sadistic or masochistic abuse"). By contrast, the fifth invites a degree of subjectivity: § 2256(2)(A)(v) prohibits the "lascivious exhibition of the anus, genitals, or pubic area" of a minor. Here, because the offending image implicates this fifth definition, Nimau—pointing to the Ninth Circuit's decision in *United States v. Perkins*—insists the image *must* have been included in the November 2019 warrant application to establish probable cause. On this view, *Perkins* imposes a "bright-line rule" that a magistrate judge is required, upon penalty of suppression, to "view [the] alleged lascivious images" before issuing a search warrant in a § 2256(2)(A)(v) investigation. 850 F.3d 1109 (9th Cir. 2017); Reply, Dkt. 35 at 2. Attention to *Perkins* itself, however, proves otherwise.

In *Perkins,* Canadian border patrol stopped the defendant due to his two twenty-year-old sex crime convictions. 850 F.3d at 1112-13. The agents discovered a pair of suspected child pornography images on Perkins's laptop, and Perkins was placed under arrest. *Id.* at 1113. Yet reviewing the images shortly thereafter, a local constable (with expertise in child exploitation) concluded the images "did not constitute pornography under Canadian law." *Id.* The Canadian government's charges against Perkins were consequently dropped. *Id.* Even so, Canadian law enforcement forwarded the case to an American HSI agent, who applied for a warrant to search all the digital devices in Perkins's home. *Id.* This application, while "explain[ing] that Canadian officers stopped Perkins because of his prior convictions and arrested him after reviewing the images" on his laptop, omitted plainly material facts—namely, the constable's "determination that the images were not pornographic," the Canadian authorities' resulting decision to drop charges,

and the images from Perkins's laptop. *Perkins*, 850 F.3d at 1113-14.

Against this backdrop, the Ninth Circuit reversed the district court's denial of Perkins's *Franks* challenge. "To prevail on a *Franks* challenge, the defendant must establish two things by a preponderance of the evidence: first, that the affiant officer intentionally or recklessly made false or misleading statements or omissions in support of the warrant, and second, that the false or misleading statement or omission was material, *i.e.,* necessary to the finding of probable cause." *Perkins,* 850 F.3d at 1116 (internal quotation marks, bracketing, and citation omitted). "If both requirements are met, the search warrant must be voided and the fruits of the search excluded[.]" *Id.* (internal quotation marks and citation omitted). In light of "the circumstances of th[e] case," the *Perkins* court applied this standard to determine "that in § 2256(2)(A)(v) investigations, search warrant applications should ordinarily include copies of the offending image[.]" *Id.* at 1123 n.12. Because the HSI agent's failure to include the image, coupled with his omission of "facts required to prevent technically true statements in the affidavit from being misleading," satisfied the first *Franks* prong, the court proceeded to the second, *id.* at 1119; and because the corrected affidavit ("a warrant application explaining that an individual with two 20-year-old convictions was in legal possession of two non-pornographic images") was "insufficient to support probable cause," Perkins satisfied the second *Franks* prong as well. *Id.* at 1122.

Insofar as Nimau invokes *Perkins* for the proposition that an officer's failure to attach the offending image to a § 2256(2)(A)(v) investigation warrant application *may* result in suppression, he is correct. Where Nimau falters, though, is in his avoidance of *Perkins*'s analytical pathway. At most—and setting aside the panel's emphasis on the unique "circumstances of th[e] case"[5]—*Perkins* elevates a certain type of omission to an adequate showing under the first half of *Franks,* and instructs courts facing such an omission to proceed to *Frank*'s second half. This modest guidance is a far cry from the watershed holding Nimau imagines. Had the *Perkins* court intended

---

[5] Most of which do not pertain where, as here, the underlying affidavit does not cherry-pick from an independent investigation while omitting that investigation's exculpatory result.

to fashion a "bright-line rule" that § 2256(2)(A)(v) warrant applications without the offending image produce per se unreasonable search warrants, it could have spared itself pages of *Franks* analysis and done just that. Because it did not, Nimau's supposed entitlement to suppression finds no footing in the law. *See, e.g., United States v. Kaiser*, 771 F.App'x 441, 442-43 (9th Cir. 2019) (holding, in an analogous post-*Perkins* § 2256(2)(A)(v) setting, that while "[i]ncluding the relevant images . . . would have been the better practice," the contested affidavit nevertheless established probable cause), *cert. denied*, 140 S. Ct. 499 (2019). Instead, if *Perkins* entitles Nimau to anything, it is merely this: consideration of *whether* the affidavit supports probable cause, *after* the offending image is taken into account. Though this inquiry cuts unmistakably in the government's favor, Nimau is afforded as much below. *See infra* Part III.B.

### 2. **Overbreadth**

Nimau urges that because the LERT Report "specified the device used [as] an Apple iPad . . . [t]here was no probable cause to seize all [of Nimau's] computer devices." Motion, Dkt. 31 at 26. "When determining whether a warrant which authorizes the seizure of a category of items is overbroad," a court must ask "(1) whether probable cause existed to seize all items of a category described in the warrant; (2) whether the warrant set forth objective standards by which executing officers could differentiate items subject to seizure from those which were not; and (3) whether the government could have described the items more particularly in light of the information available to it at the time the warrant issued." *United States v. Shi*, 525 F.3d 709, 731-32 (9th Cir. 2008) (citations omitted). As the government rightly contends, all three questions underscore the propriety of the November 2019 warrant's scope.

First, the affidavit's recital of salient aspects of both the HSI Kik Report and SA Stacer's follow-on investigation clearly furnish probable cause to search, at the very least, Nimau's iPad. This premise begets another, which SA Stacer also stated in her affidavit: because modern technology syncs data across "smart" hardware, a suspect who "uses a portable device . . . to access the Internet and child pornography" is "more likely than not . . . [to possess] evidence of this access" on multiple devices. Stacer Warrant Affidavit, Dkt. 33 at ¶¶ 20-21. Relying on these

ORDER DENYING MOTION TO SUPPRESS & DENYING REQUEST FOR *FRANKS* EVIDENTIARY HEARING
CASE NO. 20-cr-00090-RS-1
6

sworn statements, the magistrate judge arrived at the "practical, common-sense" conclusion that there was "a fair probability . . . evidence of" child pornography "[would] be found" on devices beyond Nimau's iPad. *See Illinois v. Gates,* 462 U.S. 213, 238 (1983). Second, the warrant's express concern for "[r]ecords, information, and items relating to violations" of federal child pornography, overlaid atop more specific examples of items to be seized, cabined the executing officers' discretion in a sufficiently objective manner. *See* Stacer Warrant Affidavit, Attachment B, Dkt. 33 at 38; *see also United States v. Wong*, 334 F.3d 831, 837-38 (9th Cir. 2003). Finally, and returning to an earlier theme, the multi-device reality of modern digital life precluded SA Stacer from guessing reliably at which of Nimau's devices contained evidence of child pornography. *See, e.g., United States v. Schesso,* 730 F.3d 1040, 1046 (9th Cir. 2013) (emphasis added) (crediting "the challenge of searching for digital data" relating to child pornography in upholding "the seizure and subsequent off-premises search of [defendant's] *entire* computer system and associated digital storage *devices*"). In short, the November 2019 warrant was not overbroad.

### 3. **Staleness**

Nimau posits "[t]he information in the November 19, 2019 search warrant affidavit was stale, as the alleged image sending had occurred on April 28, 2019." Motion, Dkt. 31 at 26. Put simply, Nimau is wrong. Caselaw confirms that a seven-month lapse between facts triggering a child pornography investigation and the issuance of a corresponding search warrant does not strip those facts of probative value. *See, e.g., United States v. Lacy,* 119 F.3d 742, 746 (9th Cir. 1997) (rejecting a child pornography defendant's staleness argument over a ten-month lapse); *United States v. Self,* 492 F.App'x 762, 764 (9th Cir. 2012) (rejecting the same argument over a fourteen-month lapse). Conversely, while SA Stacer's relative newness to her post[6] may be taken into account, no authority offered by Nimau supports the notion that her opinion as to the habits of

---

[6] SA Stacer had been with HSI for roughly one year when she obtained the November 2019 search warrant.

ORDER DENYING MOTION TO SUPPRESS & DENYING REQUEST FOR *FRANKS* EVIDENTIARY HEARING
CASE NO. 20-cr-00090-RS-1
7

1   child pornography possessors is ultimately any less dependable than that of her colleagues. To the
2   extent it described a seven-month-old occurrence, SA Stacer's affidavit accordingly was not stale.

### B. *Franks* Hearing Request

Utilizing many of the same arguments under the *Franks* rubric, Nimau lodges a fallback request for an evidentiary hearing on the veracity of SA Stacer's search warrant application affidavit. To secure a *Franks* hearing, a defendant must make a mini-*Franks* showing—that is, "a *substantial preliminary showing* that (1) the affidavit contains intentionally or recklessly false statements or misleading omissions, and (2) the affidavit cannot support a finding of probable cause without the allegedly false information." *United States v. Reeves,* 210 F.3d 1041, 1044 (9th Cir. 2000) (emphasis added) (citation omitted). Nimau lists three of SA Stacer's nominal omissions: the offending image, the LERT Report's determination that the image was transmitted with an iPad, and a precise timeline regarding the investigation's various hand-offs between Kik, the RCMP, and HSI.

Even supposing Nimau had made a "substantial preliminary showing" that SA Stacer "recklessly" made these omissions (he has not), reading them back in only serves to fortify the affidavit. *Reeves,* 210 F.3d at 1044 (citation omitted). Regarding the iPad information, the magistrate judge almost certainly understood that the single instance of child pornography transmission flagged by Kik traced to a single "smart" device. Had she known the device's form and brand, the scope of the warrant—for reasons already discussed—would not have changed. *See supra* Part III.A.2. As for the trajectory of the investigatory materials, Nimau's position appears to be that SA Stacer "misled the magistrate into thinking that the Government had received the Kik information on August 30, 2019, when in reality the Government had known since April 30, 2019 or thereabouts"; and that but for this subterfuge, "a warrant would not have issued due to staleness." *See generally* Reply, Dkt. 35 at 10. This thesis also fails to move the *Franks* needle. *See supra* Part III.A.3 (explaining why).

Not so for the offending image. In this Circuit, the starting point to determine if an image is lascivious is a six-factor test. *See Perkins,* 850 F.3d at 1121 (citing *United States v. Dost,* 636

F.Supp. 828 (S.D. Cal. 1986)). "Those factors are: 1) whether the focal point of the visual depiction is on the child's genitalia or pubic area; 2) whether the setting of the visual depiction is sexually suggestive, i.e. in a place or pose generally associated with sexual activity; 3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child; 4) whether the child is fully or partially clothed, or nude; 5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; [and] 6) whether the visual depiction is designed to elicit a sexual response in the viewer." *Perkins,* 850 F.3d at 1121 (quoting *Dost,* 636 F.Supp. at 832). On every single factor, the offending image militates against the need for a *Franks* evidentiary hearing.

To reiterate, the image flagged by Kik on April 28, 2019 shows a fully nude adolescent female, sitting on the floor with her legs spread apart. The camera, apparently held by the child's outstretched arm, is placed near floor level and trained at the child's exposed vaginal opening. The child's naked body predominates: apart from patch of floor on which she sits, nothing else is visible. By any assessment, the net effect is pornographic. Specifically, the image's "focal point . . . is the child's genitalia"; the child's "pose [is] generally associated with sexual activity," and "unnatural . . . considering [her] age"; the child is completely "nude"; the fact that the child appears to be photographing her own exposed genitalia connotes "a willingness to engage in sexual activity"; and the absence of *anything* in the frame other than the child's naked, sexually-provocative pose permits, if not directs, the inference of an intent "to elicit a sexual response in the viewer." *Dost,* 636 F.Supp. at 832. Whereas SA Stacer's other alleged omissions would not have impacted the affidavit's probable cause demonstration one way or another, a copy of the offending image would have left the warrant all but bulletproof. Nimau's request for a *Franks* hearing is denied.

### IV. CONCLUSION

Consistent with the foregoing, Nimau's motion to suppress is denied. His alternative request, for an evidentiary *Franks* hearing, is also denied.

**IT IS SO ORDERED**.

Dated: March 12, 2021

_____
RICHARD SEEBORG
Chief United States District Judge